**Gloria Ann WOLVERTON, Appellant,**

v.

**Clyde Donald McELROY, Appellee.**

**No. 14589.**

Court of Civil Appeals of Texas. Houston.

June 3, 1965.

John Benn, Houston, for appellant.

William M. Dickson, Houston, for appellee.

WERLEIN, Justice.

Appellee, Clyde Donald McElroy, sued his former wife to obtain custody of his daughter, Pamela Cheryl McElroy, about 8½ years of age, on the ground that there had occurred a material change of conditions since said child had been awarded to appellant, her mother, and the best interest of the child required the placing of her custody in appellee. The case was tried to the court and a jury. The jury found that since the former judgment granting custody of the minor child to the mother (now Gloria Ann Wolverton), there had occurred such a material change of conditions that the best interest of said minor child required a change of custody to Clyde Donald McElroy. Based on the finding of the jury, the court entered judgment granting custody and control of said child to appellee with rights of visitation in appellant.

Appellant contends that the court erred in refusing to direct a verdict in her favor because there was insufficient evidence adduced on the trial to warrant submission of an issue to the jury as to whether or not there had occurred such material change of conditions that the best interest of the said minor child required a change of custody to appellee. Appellant also complains that the court erred in failing to grant a mistrial on the ground that counsel for appellee repeatedly referred to appellant's former husband, Charles W. Leavens, as being indicted by the Harris County Grand Jury, and also on the ground that said counsel repeatedly stated or insinuated that appellant had been in a mental institution when there was no evidence to substantiate such statement.

We have carefully read the statement of facts, and are of the opinion that there was ample evidence which warranted the trial court's submission of the issue relative to custody of the child. We shall not undertake to recite at length the testimony of the numerous witnesses who testified at the trial, but shall refer to some of the evidence in support of the jury's finding and the trial court's judgment. Appellant's point of error is a "no evidence" point.

Appellant was granted a divorce from appellee, her second husband, on March 6, 1961. The court at that time awarded the custody of Pamela, who was then 5 years of age, to appellant, and decreed that appellee pay the sum of $15.00 weekly as child support. Shortly after her divorce, appellant, on April 14, 1961, married one Charles W. Leavens. She lived with him about 6½ months, and divorced him on February 12, 1962. Two days after divorcing Leavens, she married one Herbert Elvin Megason. She divorced Megason on July 30, 1962, after living with him several months. On August 11, 1962, she married Clarence C. Wolverton, and divorced him on or about September 13, 1963. She was married to

him about 13 months, but lived with him only several months. During these frequent changes of husbands and concomitant circumstances, the child was living with her and was exposed thereto.

Appellant admitted to drinking beer but denied she drank to excess. She also denied beating her child, saying that she would put her on her knees and spank her. When asked if Wolverton abused the child, she testified that she had to go into the child's room and stack furniture against the door and sleep with the window open over and over again. She admitted having several beers at several lounges on or about April 5, 1964, and having a date with one Andy, whose last name she did not know. She testified that after divorcing Wolverton, he and his new wife constantly called her at various times of the night and harassed her continually. The Wolvertons denied this, and testified that she had called them numerous times, and that on the night of April 5, 1964, she went to the Wolverton apartment, and at that time she was drunk. In leaving she backed against the side of a car.

The testimony of several witnesses shows that appellee frequently visited lounges, where she drank not only beer but mixed drinks, and that she would become noisy, curse and use indecent language. Wolverton testified that on one occasion while they were married she tried to push him out of the car while driving on a freeway; that on the night of April 5, 1964, when she came to his apartment, she was drunk, and threatened to kill him with a pair of scissors; that he called her step-father and mother and also the police. He also testified to the fact that on one occasion she had used a belt buckle on Pamela and had left marks on her person; and that she drank Bourbon and Vodka in the presence of Pamela, and would become "plastered".

Appellee testified that she had threatened at one time to kill him. She admitted that she had been in an emotional nervous condition for several years, and that she took pills prescribed by one Dr. Nance. She also testified that she had been in a hospital twice, once for some 7 or 8 days, and that she had taken shock treatments and insulin for her nervous condition.

One Saulnier, who was employed some 14 years by Southwestern Bell Telephone Company, testified that he had been in the Wolverton home some 4 times, and on one occasion Mrs. Wolverton drank half a dozen beers; that he had seen her a dozen times in the Topaz and Blue Skies Lounges, had heard her cursing there some 4 or 5 times, and on one occasion she was asked to leave because she raised so much "Cain" and used such bad language, that she had a bottle of Vodka and drank mixed drinks, and that he had seen her about half drunk.

Appellant's mother, with whom the child was left on occasions, testified that her daughter had never been in a mental institution, and that she took good care of the child. She admitted that appellant had had psychiatric treatment. Both Wolverton and appellee testified to the fact that she would go into tantrums and start slinging things around. Wolverton also testified that she was frequently out at night; that he had seen her when she was drunk and numb, and that she would take the child with her sometimes and go away on occasions maybe for several days; that she constantly used indecent language and threatened him during the time of their marriage and used bad language in the presence of the child.

Appellee testified as to the amount of money that he was making as a carbide tool grinder in the employ of Cameron Iron Works, where he had worked for 8½ years. On August 12, 1961 he married his present wife who had three children, and was working in a beauty salon. He testified that neither he nor his wife drank and that they went to church, and that he and his present wife were able to take proper care of Pamela. He further testified that the child would tell fibs; that her hair was filthy and her clothes were too large for

her; and also that appellant's own appearance had changed since her divorce in March, 1961. Pamela was placed on the stand and testified that appellant drinks "every once in a while," that she made one or two F's at school; that she would want to visit her daddy if permitted to do so, and that if the court decided that she should live with her father, she would want to visit with her mother, too, and that she loved both her mother and her daddy.

Appellant denied many of the incidents testified to by other witnesses. The credibility of the witnesses and the weight to be given their testimony was, of course, for the jury. The jury heard all of the testimony, looked into the faces of the witnesses and found that the best interest of the child required that her custody be changed due to a material change of conditions. There was ample evidence in support of their finding.

Counsel for appellee on a number of occasions would base his questions upon an assumption of some fact that was not in evidence. He was admonished several times by the court to desist from such tactics, but was rather persistent in stating or insinuating certain facts not in evidence and then basing questions thereupon. Each time this was done an objection was made by appellant's counsel, and the court properly and promptly instructed the jury not to consider the statements or assumptions made by counsel. The evidence shows that counsel asked such questions as: "You have been in the hospital on numerous times since taking psychiatric treatment?"; "You were told at that time by your doctor in your presence, personally to you, that you were suffering from a schizophrenic reaction?"; "Is it not true that on numerous occasions when you have been in the hospital suffering from mental disorders * * *" He also propounded

the following question to another witness: "Did you attend a Christmas party in December, 1960, where Mrs. McElroy was present and became thoroughly intoxicated and had to be removed bodily from the party?"

Since the court promptly sustained objections to such questions, and, when requested, instructed the jury not to consider them, it is our view that the court did not err in refusing to grant a mistrial. The testimony of appellant and others showed that appellant had not been in a mental institution, and had not been carried out bodily from a party. The testimony showed the extent of appellant's mental disturbances. She admitted that she had been very nervous for several years; that she had been in the hospital on two occasions and had had shock treatments and insulin. There is also testimony that she had had psychiatric treatment. We cannot say that said questions based largely on assumptions of appellee's counsel actually so prejudiced the jury as to result in an improper verdict. The jury heard all the witnesses and the evidence and could scarcely have been misled by apparently unfounded assumptions made by appellee's counsel to which objections were sustained and which they were promptly instructed not to consider for any purpose. Rule 434, Texas Rules of Civil Procedure. We are also of the opinion that appellee's reference to the fact that Leavens, one of appellant's erstwhile husbands, had been indicted by the Harris County grand jury did not prejudice the jury against appellant. She was not shown to have any connection with any dereliction on his part, if such there was, and she had divorced him more than two and a half years before the trial. Furthermore, appellant's objections to such references were sustained and the jury was instructed not to consider the same.

Judgment affirmed.